## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **M.T., Individually and as next friend of minor, M.S.** | |
| **Plaintiff,** | |
| **v.** | **Case No. 17-2710-JAR-GEB** |
| **OLATHE PUBLIC SCHOOLS USD 233 AND ITS BOARD OF EDUCATION, et al.,** | |
| **Defendants.** | |

## MEMORANDUM & ORDER

This case arises out of the alleged sexual assault of one minor student by another at Pioneer Trail Middle School in Olathe, Kansas. Plaintiff M.T. brings this action individually and as next friend of her minor daughter, M.S., against Olathe Public Schools U.S.D. 233, the Olathe Board of Education, and the alleged assailant, D.B.[1] In addition to various state-law claims, Plaintiff brings a claim against the School District pursuant to Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a). Plaintiff's Complaint also invokes 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Pending before the Court is a partial motion to dismiss filed by Defendants Olathe Public Schools U.S.D. 233 and the Olathe Board of Education ("School District Defendants") on February 16, 2018 (Doc. 12). The School District Defendants argue that all claims against the Olathe Board of Education should be dismissed because the Board of Education is entitled to

---

[1] Doc. 5.

sovereign immunity under the Eleventh Amendment, and because it is not a separate legal entity

from the School District and is not an entity that can be sued under Kansas law.  The School

District Defendants further argue that Plaintiff has failed to state a claim under Title IX or §

1983, that Plaintiff has failed to state a claim for unjust enrichment, and that Plaintiff is not

entitled to recover punitive damages.

Plaintiff failed to file a response to the School District Defendants' motion to dismiss and

the time to do so has expired.[2]  Under D. Kan. Rule 7.4,

> Absent a showing of excusable neglect, a party or attorney who fails
> to file a responsive brief or memorandum within the time specified
> in D. Kan. Rule 6.1(d) waives the right to later file such brief or
> memorandum. If a responsive brief or memorandum is not filed
> within the Rule 6.1(d) time requirements, the court will consider and
> decide the motion as an uncontested motion. Ordinarily, the court
> will grant the motion without further notice.

As a result of Plaintiff's failure to respond, the Court may grant the motion to dismiss as

uncontested.  For the reasons set forth more fully below, the Court also finds that all of

Plaintiff's claims against the Olathe Board of Education, her claim based on Title IX (Count I),

and any claim premised upon the Fourteenth Amendment and § 1983, must be dismissed on the

merits.  The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-

law claims and dismisses those claims without prejudice.  Therefore, the Court does not reach

the School District Defendants' arguments concerning unjust enrichment and the availability of

punitive damages.

Also pending before the Court is Plaintiff's Motion to Dismiss Defendant D.B. Without

Prejudice (Doc. 19).  Because Plaintiff's remaining state-law claims are dismissed without

---

[2] *See* D. Kan. R. 6.1(d)(2) (requiring a response to a dispositive motion to be filed within twenty-one days).
Plaintiff was granted a two-day extension of her response deadline on March 12, 2018 (Doc. 15), but has filed no
response to date.

prejudice, Plaintiff's motion is denied as moot.

## I.    Legal Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[3] and must include "enough facts to state a claim for relief that is plausible on its face."[4] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[5]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[6]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[7]  Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[8]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[9]  Thus, the

---

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

[4] *Id*. at 570.

[5] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[7] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[8] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[9] *Id*. (quoting *Twombly*, 550 U.S. at 555).

court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[10]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[11]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]

## II.    Factual Allegations

Plaintiff alleges that in 2015, M.S. was a twelve-year-old student at Pioneer Trail Middle School.  One morning in December of that year, M.S.'s teacher sent some of her students, including M.S. and D.B., to a common area to complete unfinished homework.  M.S. and D.B. were among the first to finish their assignments, and the common-area instructor directed them to return to their first-hour classroom without supervision and without alerting the classroom teacher that students were returning.  D.B. suggested to M.S. that they use an alternate route to return to their classroom, a route with which M.S. was unfamiliar.  While they were walking back using the route suggested by D.B., he pulled M.S. into a boys' restroom, where he raped her and forced her into oral sex.

After the assault concluded, M.S. was seen leaving the boys' restroom by a school custodian, Mr. Croushore.  Mr. Croushore did not stop M.S. or investigate the unusual occurrence.  By the time M.S. arrived back at her first-hour classroom, the other students who had been sent to the common area had returned.  Although M.S. was the first student to leave the

---

[10] *Id.* at 678–79.

[11] *Id.* at 679.

[12] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

common area, she was the last to return to class.  M.S.'s first-hour teacher scolded her for being

inexplicably late, but neither her first-hour teacher nor the common-area teacher investigated

why M.S. had been gone for so long.  M.S. did not report being raped to either teacher.

M.S. told another student in her second-hour class about the rape, and then reported the

rape to her third-hour teacher.  After M.S. reported the rape to her third-hour teacher, the Pioneer

Trail school resource officer transported her to Shawnee Mission Medical Center for treatment.

The medical records contain corroboration of forcible penetration.

## III.    Analysis

### A.    Claims Against the Olathe Board of Education

The School District Defendants make two arguments for the dismissal of Plaintiff's

claims against the Olathe Board of Education.  First, the School District Defendants briefly argue

that the Board of Education is a state entity and, therefore, entitled to qualified immunity from

suit under the Eleventh Amendment.[13]  Second, the School District Defendants argue that all

claims against the Board of Education should be dismissed as duplicative because while it is the

governing body for the local Olathe School District, it is not a separate legal entity.[14]  The Court

need not reach the question of qualified immunity because Plaintiff's claims against the Board of

---

[13] Doc. 13 at 5–6.

[14] *Id*. at 6–7.  The School District Defendants do not argue that the Olathe School District is a state entity entitled to Eleventh Amendment immunity.  *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (setting forth factors to be considered in deciding whether local board of education is entitled to Eleventh Amendment immunity and finding that local board of education in Ohio was "more like a county or city than it is like an arm of the State"); *Ambus v. Granite Bd. of Educ.,* 995 F.2d 992, 995 (10th Cir. 1993) (noting that "[n]early all other courts considering the issue since *Mt. Healthy* have refused to grant local school districts Eleventh Amendment immunity") (citations omitted); *Unified Sch. Dist. No. 480 v. Epperson*, 583 F.2d 1118, 1123 (10th Cir. 1978) (holding that local Kansas school district "and its school board members acting in their official capacity, are not the alter ego of the state, but are more like a municipality, for example, and hence do not enjoy Eleventh Amendment immunity").  Given the School District Defendants' argument that the Olathe School District and the Olathe Board of Education are the same legal entity, it is difficult to see how Eleventh Amendment Immunity would extend to the local Board of Education.  In any event, the Court need not reach this issue.

Education are duplicative of her claims against the School District and must therefore be dismissed.

"Under Kansas law, a school district may sue and be sued in the name of the unified school district."[15]  The School District Defendants point out that "[w]hile the Board of Education is the governing body of the School District, it is not a separate legal entity with the capacity to sue or be sued under Kansas law."[16]  As explained by another judge of this Court,

> [B]ecause the board of education is merely the governing body of the school district and is not a separate legal entity, any judgment against the board necessarily is against the school district.  As with claims against individuals acting in their official capacities for a school district, a claim against a sub-unit of a school district is the equivalent of a suit against the school district itself.  A suit against both entities is duplicative.[17]

All of Plaintiff's claims asserted against the Olathe Board of Education are also asserted against the Olathe School District.  Accordingly, Plaintiff's claims against the Board of Education are dismissed as duplicative.

## B.    Title IX Claim

In Count I, Plaintiff brings a claim against the Olathe School District under Title IX.  The School District Defendants argue that Count I fails to state a claim because Plaintiff's Complaint contains no allegation that the School District had actual notice of any harassment by or violent tendency of D.B. prior to the assault at issue, and that the School District took immediate action upon learning of the assault.[18]  The Court agrees that Plaintiff has failed to state a claim under

---

[15] *Rubio v. Turner Unified Sch. Dist.* No. 202, 453 F. Supp. 2d 1295, 1300 (D. Kan. 2006) (citing K.S.A. § 72-1131 (formerly cited as K.S.A. § 72-8201)).

[16] Doc. 13 at 6.

[17] *Rubio*, 453 F. Supp. 2d at 1300.

[18] Doc. 13 at 11–15.

Title IX.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[19]  The Supreme Court has held that a Title IX claim may lie against a school district that receives federal funding in a case of student-on-student harassment in limited circumstances where the school district "acts with deliberate indifference to known acts of harassment in its programs or activities," and where such harassment is "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit."[20]  The Tenth Circuit has reiterated that: "[a] school district may be liable under Title IX provided it (1) has actual knowledge of, and (2) is deliberately indifferent to, (3) harassment that is so severe, pervasive and objectively offensive as to (4) deprive access to the educational benefits or opportunities provided by the school."[21]

Although Plaintiff alleges that the School District was "deliberately indifferent to the risk of harm to female children by male students,"[22] nowhere does Plaintiff allege that the School District, or an appropriate person employed by the School District, had actual knowledge of harassment suffered by M.S. until *after* the single incident of sexual assault on which this case is based.  Per Plaintiff's own Complaint, the School District had no actual notice of any harassment until the day of the assault in December 2015, when M.S. informed her third-hour teacher that

---

[19] 20 U.S.C. § 1681(a).

[20] *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999).

[21] *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008) (citing *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999)).

[22] Doc. 5 ¶ 28.

she had been raped.[23]  Thus, the question of whether the School District was "deliberately

indifferent" to harassment must be assessed as of the date that the School District had actual

notice.[24]

      "A district is deliberately indifferent to acts of student-on-student harassment 'only where

the [district's] response to the harassment or lack thereof is clearly unreasonable in light of the

known circumstances.'"[25]  While Plaintiff alleges that the School District "failed to reasonably

investigate Plaintiff's complaint regarding sexual harassment, discrimination and the sexual

assault,"[26] this allegation, standing alone, is inconsistent with Plaintiff's allegation that the

school resource officer immediately transferred M.S. to a hospital for evaluation and treatment

following her report to a teacher that she had been raped.[27]  Plaintiff makes no substantive

allegations whatsoever concerning the manner in which she contends that the School District's

response was inadequate.  For example, she makes no allegations concerning the School

District's actions (or lack thereof) in investigating the rape or disciplining D.B.  Nor does

Plaintiff allege that M.S. has been subjected to further harassment since reporting her rape.

---

[23] *Id*. ¶ 15.  While Plaintiff alleges that a school custodian saw her leaving a boys' restroom under suspicious circumstances and failed to stop her or investigate, the Court finds this allegation insufficient to establish actual notice of harassment.  *See id*. ¶ 12.  In any case, M.S.'s encounter with the school custodian happened, at most, only an hour or two before she informed a teacher that she had been raped.

[24] *See Rost*, 511 F.3d at 1121 ("We need not respond to [plaintiff's] argument that the district was deliberately indifferent in its response to the harassment prior to [her daughter's] January 2003 disclosure as we have concluded that the district had no knowledge of the harassment until January 2003."); *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 750 (2d Cir. 2003) ("Requiring actual, as opposed to constructive, knowledge imposes a greater evidentiary burden on a Title IX claimant.").

[25] *Rost*, 511 F.3d at 1121 (citing *Davis*, 526 U.S. at 648); *see also C.R.K. v. U.S.D. 260*, 176 F. Supp. 2d 1145, 1162 (D. Kan. 2001) (citing *Davis*, 526 U.S. at 648).

[26] Doc. 5 ¶ 29

[27] *Id*. ¶ 16.

Rather, the gist of Plaintiff's Count I appears to be that the School District did not do enough to prevent harassment of which it had no actual notice. While Plaintiff alleges that the School District's "corrective and preventive opportunities were unreasonable and inadequate to protect [M.S.] and other similarly situated children,"[28] this allegation appears to refer to general policies in place to prevent harassment, not action taken with respect to harassment of which the School District had actual knowledge.[29] While the failure to provide a safe environment for students may give rise to state-law tort liability under certain circumstances,[30] such failures do not supply the basis for a Title IX claim in the absence of actual notice of harassment.[31] Plaintiff fails to allege facts sufficient to satisfy the Tenth Circuit's requirement that "a school official who possessed the requisite control over the situation had actual knowledge of, and was deliberately indifferent to, the alleged harassment."[32] Accordingly, Plaintiff fails to state a Claim

---

[28] *Id.* ¶ 30.

[29] *See* Doc. 5 ¶ 19(a)–(f) (alleging that the Olathe School District failed to protect students by failing to: (1) provide a safe and orderly learning environment; (2) train district personnel about safety and security practices; (3) use video surveillance to deter criminal activity and other violations of school policy; (4) monitor the safety of students through radio communications; (5) provide an adequate hall-monitoring system at Pioneer Trail Middle School; and (6) supervise students under its control).

[30] *See, e.g.*, *Davis*, 526 U.S. at 644 ("The common law, too, has put schools on notice that they may be held responsible under state law for their failure to protect students from the tortious acts of third parties.") (citations omitted). The Court expresses no opinion herein regarding the viability of Plaintiff's tort claims, which are not subject to the School District Defendants' motion to dismiss.

[31] *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 750 n.11 (2d Cir. 2003) ("After [the Supreme Court's rulings in] *Gebser* and *Davis*, it is clear that in Title IX cases, an educational institution that receives federal funds cannot be held liable for harassment by teachers or students short of the school's actual knowledge of, and deliberate indifference to, the harassment.") (citing *Gebser v. Lago Visto Indep. Sch. Dist.*, 524 U.S. 274, 290–91 (1998); Davis, 526 U.S. at 644–45).

[32] *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1247 (10th Cir. 1999); *see also Rost*, 511 F.3d at 1119 (holding that "in the absence of anyone knowing that the sexual harassment was occurring, a negligent failure to investigate [plaintiff's] generalized complaints [does] not result in Title IX liability"); *Doe ex rel. Conner v. Unified Sch. Dist. 233*, No. 12-2285-JTM, 2013 WL 3984336, at *4–5 (D. Kan. Aug. 1, 2013) (stating that "[t]he plaintiff must show that he notified an 'appropriate person' under Title IX—a school official with the authority to take corrective measures in response to the sexual harassment," and that "the notice must be sufficiently detailed to alert the school district official of the possibility of the Olathe Title IX plaintiff's harassment.") (citing *Gebser*, 524 U.S. at 290; *Rost*, 511 F.3d at 1119–20).

under Title IX and Count I of her Complaint is dismissed.

### C.      Claims Asserted Pursuant to 42 U.S.C. § 1983

Section 1983 provides a cause of action for the deprivation of federal rights by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . ."[33]  Plaintiff states in the first numbered paragraph of her Complaint that she is alleging violations of "the Due Process Clause of the Fourteenth Amendment to the United States Constitution via 42 U.S.C. § 1983."[34]  However, none of Plaintiff's individual causes of action reference either § 1983 or the Fourteenth Amendment, and nowhere in her Complaint does Plaintiff state the defendant or defendants against whom she asserts a § 1983 claim.  The School District Defendants move to dismiss any claim premised upon § 1983 because, among other reasons, Plaintiff has failed to allege discriminatory intent.[35]  Although the School District Defendants acknowledge that Plaintiff purports to bring a due-process claim, their briefing instead addresses an equal-protection claim.  Given the ambiguity of Plaintiff's Complaint, the Court addresses both theories in an abundance of caution and finds that Plaintiff fails to state a claim under either.

Because § 1983 claims may be asserted only against persons acting under color of state law, the Court assumes that Plaintiff has attempted to plead this claim against the Olathe School District, rather than against D.B.  "The Fourteenth Amendment provides that '[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws.  A denial of equal

---

[33] 42 U.S.C. § 1983.

[34] Doc. 1 ¶ 1.

[35] Doc. 13 at 7–11.

protection of the laws under color of state law is actionable under 42 U.S.C. § 1983."[36]  "Sexual

harassment by a state actor may violate the equal protection clause."[37]  The Tenth Circuit has

explained:

> A school district's liability for sexual harassment under the Equal
> Protection clause is analyzed under a municipal liability framework.
> A claim of municipal liability for sexual harassment requires that
> the state employee's discriminatory [actions] be representative of an
> official policy or custom of the institution, or are taken by an official
> with final policymaking authority.  In the absence of an official
> policy, a municipality may still be liable for the widespread and
> persistent practice of sexual harassment which constitutes a
> custom.[38]

Nowhere does Plaintiff allege that the harassment M.S. experienced was representative of

or attributable to an official policy of the Olathe School District.  On the contrary, Plaintiff

expressly alleges that "Defendant USD 233 had a policy prohibiting discrimination and

harassment of students and had a policy for student complaints of sexual harassment."[39]  If

Plaintiff is attempting to allege that the School District had a custom of failing to investigate

and/or act on complaints of harassment, she would need to show: "(1) a continuing, widespread,

and persistent pattern of misconduct by the state; (2) deliberate indifference to or tacit

authorization of the conduct by policy-making officials after notice of the conduct; and (3) a

resulting injury to the plaintiff."[40]  Plaintiff alleges that when M.S. reported her rape to a teacher,

the school responded by having her transported to a hospital for medical care.  Plaintiff does not

---

[36] *Rost*, 511 F.3d at 1124 (citing U.S. Const. amend. XIV, § 1).

[37] *Id*. (citing *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989)).

[38] *Id*. at 1124–25 (citations omitted).

[39] Doc. 1 ¶ 18.

[40] *Rost*, 511 F.3d at 1125 (citing *Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cty., Kan*., 996 F.2d 1035, 1041 (10th Cir. 1993); *P.H. v. Sch. Dist. of Kan. City, Mo*., 265 F.3d 653, 658–59 (8th Cir. 2001)).

allege any incident of harassment occurring before or since the single sexual assault on which this case is based, nor does she provide any factual allegations to support her assertion that the School District failed to adequately investigate M.S.'s rape according to its own policy. The Tenth Circuit has held that acts of sexual harassment by one student directed solely at another student "do not demonstrate a custom or policy of the School District to be deliberately indifferent to sexual harassment as a general matter."[41] Because Plaintiff's Complaint is devoid of factual allegations to support that the School District had notice of and displayed deliberate indifference toward a pattern of unconstitutional acts, any causes of action premised upon the Equal Protection Clause of the Fourteenth Amendment and § 1983 are dismissed.

Similarly, Plaintiff fails to state a Fourteenth Amendment due-process claim. "As a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."[42] "Although '[the Due Process Clause] forbids the State itself to deprive individuals of life, liberty, or property without due process of law, . . . its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.'"[43]

The Tenth Circuit has explained that there are two exceptions to this rule—the special-relationship doctrine and the danger-creation theory.[44] "First, the special relationship doctrine 'exists when the state assumes control over an individual sufficient to trigger an affirmative duty

---

[41] *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1250 (10th Cir. 1999).

[42] *Rost*, 511 F.3d at 1125 (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)).

[43] *Id.* at 1125–26 (quoting *DeShaney*, 489 U.S. at 195).

[44] *Id.* at 1126.

to provide protection to that individual.'"[45]  This doctrine applies where the state has restrained "an individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means."[46]  The Tenth Circuit has expressly held that the special-relationship doctrine does not apply in the context of compulsory school-attendance laws, "which do not spawn an affirmative duty to protect under the Fourteenth Amendment,"[47] even when the defendant is alleged to have knowledge of dangerous circumstances.[48]  Thus, although Plaintiff alleges that M.S. was within the School District's custody and control,[49] these allegations are insufficient to invoke a special relationship between the School District and M.S. giving rise to a duty under the Due Process Clause to protect M.S. from the actions of third parties.

Second, "the danger creation theory provides that 'a state may also be liable for an individual's safety if it created the danger that harmed the individual.'"[50]  A danger-creation claim is subject to a six-part test:

> (1) [T]he state entity and individual actors created the danger or increased the plaintiff's vulnerability to the danger; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at a substantial risk of serious,

---

[45] *Id*. (quoting *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1280 (10th Cir. 2003)).

[46] *Armijo v. Wagon Mound Pub. Schs*., 159 F.3d 1253, 1261 (10th Cir. 1998) (quoting *DeShaney*, 489 U.S. at 200).

[47] *Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991, 994 (10th Cir. 1994).

[48] *Id*. at 995; *see also Armijo*, 159 F.3d at 1261 (acknowledging prior holding in *Graham* that "schools have no duty under the Due Process Clause to protect students from assaults by other students, even where the school knew or should have known of the danger presented.") (quoting *Seamons v. Snow*, 84 F.3d 1226, 1235–36 (10th Cir. 1996)).

[49] Doc. 5 ¶¶ 38, 54, 62.

[50] *Rost*, 511 F.3d at 1126 (quoting *Christiansen*, 332 F.3d at 1280).

immediate, and proximate harm; (4) the risk was obvious and known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience.[51]

The Tenth Circuit has explained that this test requires "deliberately wrongful government decisions rather than merely negligent government conduct."[52]  Further,

> the key to the state-created danger cases . . . lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger . . . .  Thus the environment created by the state actors must be dangerous; **they must know it is dangerous**; and, to be liable, they must have used their authority to create an opportunity that would not have otherwise existed for the third party's [acts] to occur.[53]

Plaintiff has failed to allege facts sufficient to establish that the danger-creation theory would apply here.  Among other deficiencies, Plaintiff's Complaint lacks allegations sufficient to establish that the School District had knowledge of the risk to M.S. and acted recklessly and with conscious disregard of that risk.  Plaintiff's Complaint fails to state a Fourteenth Amendment claim under either the Equal Protection or the Due Process clause and, therefore, any cause of action premised upon the Fourteenth Amendment and § 1983 is dismissed.

---

[51] *Id*. (quoting *Christiansen*, 332 F.3d at 1281).

[52] *Id*. (quoting *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995), *cert. denied*, 516 U.S. 1118 (1996)).

[53] *Armijo*, 159 F.3d at 1263 (emphasis added) (quoting *Johnson v. Dallas Indep. Sch. Dist*., 38 F.3d 198, 201 (5th Cir. 1994)); *see also Seamons*, 84 F.3d at 1236 ("[A] claim brought under the 'danger creation' theory must be predicated on 'reckless or intentional injury-causing state action which shocks the conscience.'  [I]t is not enough to show that the state increased the danger of harm from third persons; the [§] 1983 plaintiff must also show that the state acted with the requisite degree of culpability in failing to protect the plaintiff.") (quoting *Uhlrig*, 64 F.3d at 572–73).

### D.    State-Law Claims

In addition to claims under Title IX and § 1983, Plaintiff brings state-law claims for breach of fiduciary duty and/or confidential relationship (Count II),[54] outrageous conduct (Count III), negligent failure to supervise children under the Kansas Tort Claims Act (Count IV), negligent infliction of emotional distress (Count V), and unjust enrichment (Count VI). "'[F]ederal courts have no jurisdiction without statutory authorization.'"[55]  However, § 1367(a) provides that:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . .[56]

Thus, district courts having original jurisdiction to hear federal claims also have discretion to exercise supplemental jurisdiction over state-law claims where the plaintiff can demonstrate that "the claims not within the original jurisdiction of the court form part of the same 'case or controversy under Article III' as [his] federal claims."[57]  Federal and state claims arise from the same "case or controversy" where the "state and federal claims . . . derive from a common

---

[54] Plaintiff's claim for breach of fiduciary duty and/or confidential relationship is the second count of her Complaint, but is incorrectly titled as "Count III."

[55] *Davis v. King*, 560 F. App'x 756, 759 (10th Cir. 2014) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)).

[56] 28 U.S.C. § 1367(a).

[57] *Oltremari by McDaniel v. Kan. Soc. & Rehab. Servs.*, 871 F. Supp. 1331, 1340 (D. Kan. 1994) (quoting *Fasco Indus., Inc. v. Mack*, 843 F. Supp. 1252, 1256 (N.D. Ill. 1994)).

nucleus of operative fact . . . ."[58]

 While Plaintiff's state-law claims in this case may arise from the same case or controversy as her federal claims, "[u]nder 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a state-law claim for a number of reasons, including if 'the district court has dismissed all claims over which it has original jurisdiction.'"[59]  The Supreme Court has explained that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."[60]  Having dismissed Plaintiff's federal claims on the merits, the Court sees no compelling reason to exercise supplemental jurisdiction over her state-law claims and, therefore, dismisses those claims without prejudice.[61]

 **IT IS THEREFORE ORDERED BY THE COURT** that the School District Defendants' Motion to Dismiss (Doc. 12) is **granted** as to all claims against the Olathe Board of Education, Count I (Title IX), and any claim premised upon the Fourteenth Amendment and § 1983.  Further, this Court declines to exercise jurisdiction over and dismisses without prejudice Plaintiff's remaining state-law claims (Counts II–VI).  Accordingly, Plaintiff's Motion to

---

[58] *Id.* at 1340 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

[59] *Bryner v. Lindberg*, 429 F. App'x 736, 737 (10th Cir. 2011) (quoting 28 U.S.C. § 1367(c)); *see also Villalpando ex rel. Villalpando v. Denver Health and Hosp. Auth.*, 65 F. App'x 683, 688 (10th Cir. 2003) ("[W]hen a district court dismisses the federal claims, leaving only supplement[al] state claims, the most common response has been to dismiss the state claim or claims without prejudice.") (citing *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002)).

[60] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

[61] *See Botefuhr*, 309 F.3d at 1273 (explaining that absent a showing that the parties have already expended a great deal of time and energy on supplemental state-law claims, such claims should normally be dismissed after all federal claims have been dismissed, "particularly when the federal claims are dismissed before trial") (citations omitted).

Dismiss Defendant D.B. Without Prejudice (Doc. 19) is **denied** as moot.

      **IT IS SO ORDERED.**

      <u>Dated: April 18, 2018</u>

                                       <u>S/ Julie A. Robinson</u>
                                       JULIE A. ROBINSON
                                       CHIEF UNITED STATES DISTRICT JUDGE